**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **WAGMAN HEAVY CIVIL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | <u>**JURY TRIAL**</u> |
| ) | <u>**DEMANDED**</u> |
| **v.** ) | |
| ) | |
| **STARR INDEMNITY AND LIABILITY** ) | |
| **COMPANY,** ) | **Civil Case No.: 1:22-57** |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT

Wagman Heavy Civil, Inc. ("Wagman"), by and through its undersigned counsel, for its Complaint against Starr Indemnity and Liability Company ("Starr"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an insurance coverage dispute arising from the construction of a bridge across the Rappahannock River on Southbound Interstate 95.  Starr wrongly applied substantial flood damage deductibles to four different covered claims, decreasing the amount payable to Wagman by more than half a million dollars.  Wagman files this lawsuit to recover the full amount owed by Starr.

2.     Starr sold Wagman a Builders' Risk Policy (the "Policy") in connection with Wagman's I-95 Southbound CD Lanes project (the "Bridge Project" or the "Insured Project").  The Policy covers all risks of loss arising out the Insured Project, which consisted of constructing a bridge and improving the roadways on the southbound side

of I-95.  This included new construction of approximately five miles of asphalt paved interstate roadway, construction of a new three lane bridge crossing over the Rappahannock River (the "River"), and the reconfiguration of an interchange and construction of three new overpass structures near Warrenton Road, which connected the interchange to I-95.

3.     The Bridge Project required the construction of a temporary structure built of wood, stone and wire mesh, among other things, in the River.  (This temporary structure is referred throughout this Complaint as the "Temporary Causeway".)

4.     Unexpectedly, and on several occasions, the flow and velocity of the River water increased, damaging the Temporary Causeway.

5.     The losses and damages to the Temporary Causeway resulted in "Water Damage" as defined by and covered by the Policy.

6.     Wagman seeks the full benefits and protection of the insurance it purchased from Starr for the losses sustained as a result of Water Damage to the Temporary Causeway.

## THE PARTIES

7.     Plaintiff Wagman Heavy Civil, Inc. is a Pennsylvania corporation with its principal place of business in York, Pennsylvania.

8.     Upon information and belief, defendant Starr Indemnity and Liability Company is an insurance company organized under the laws of the State of Texas with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties enjoy complete diversity of citizenship (as set forth above in paragraphs 7 and 8 of this Complaint) and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     This Court has personal jurisdiction over Starr because at all relevant times, Starr operated, conducted, engaged in, and carried on business ventures in Virginia, there is a nexus between such business ventures and this action, and Starr has engaged in substantial, non-isolated activity in Virginia. *See* Va. Code Ann. § 8.01-328.1 (2022). Furthermore, in connection with this dispute, Starr contracted to insure risks located in Virginia under the Builders Risk insurance policy at issue in this case. *See id.*, § A.7.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Starr breached the insurance policies it sold to Wagman in this judicial district, because the property damage that is the subject of this suit is located in this judicial district, and because Starr is subject to this Court's personal jurisdiction.

## FACTS COMMON TO ALL COUNTS

**I.      The Policy Covers Physical Loss or Damage Caused by Water Damage.**

12.     As part of the Bridge Project, Wagman purchased Builders' Risk Policy No. ICN100070337418 (the "Policy") for the policy period August 6, 2018 to February 6, 2022. A true and correct copy of the Policy is attached hereto as Exhibit 1.  The policy is an all risk property policy that includes coverage for a wide range of risks, including (but not limited to) losses from fire damage, water damage and a wide variety of risks arising during and as a consequence of the construction process.

13.     Wagman has paid all insurance premiums due and owing for the Policy in the amount of $201,450.

14.     The Policy identifies the Insured Project Site as "I-95 from Warrentown [sic] Road to the Rappahannock River, Virginia."  *See* Ex. 1, § A – Declarations, ¶ 5.

15.     The Policy describes the Insured Project as:

> **Project Name: I-95 Southbound CD Lanes**
> New construction of approximately 5 miles of asphalt paved interstate roadway, construction of new 5 span, 5 pier, 3 lane bridge crossing over the Rappahannock River and reconfiguration of existing interchange near Warrentown [sic] Road which includes construction of 3 new overpass structures connecting interchange to I-95.

*See* Ex. 1, § A – Declarations, ¶ 6.

16.     The Policy provides broad insurance coverage.  Indeed, the "'Policy' insures risks of direct physical loss or damage to insured property, except as otherwise excluded."  *See* Ex. 1, § A – Declarations, ¶ 7.

17.     The "insured property" includes, in relevant part, "[a]ll scaffolding, form work, fences, shoring, falsework and temporary buildings or structures incidental to the 'Insured Project[.]'"  *See* Ex. 1, § B – Property Damage, ¶ 1(D).  There is no dispute between the Parties that this includes, among other things, the Temporary Causeway.

18.     The Policy extends coverage for "Contractor's Extra Expense" as follows:

> In the event of direct physical loss or damage insured hereunder and occurring during the Policy Period, this "Policy" is extended to cover "Extra Expense" incurred as a result of such direct physical loss or damage to the Insured Project hereunder.

*See* Ex. 1, § B – Property Damage, ¶ 4(L).

4

19.     The Policy has a $75,570,713 sub-limit of liability "as respects physical loss or damage to insured property at the 'Insured Project Site[.]'"   *See* Ex. 1, § A – Declarations, ¶ 9(B)(2)(a).

20.     The Policy has a $25,000 deductible "as respects physical loss or damage caused by or resulting from 'Water Damage[.]'"   *See* Ex. 1, § A – Declarations, ¶ 10(B).

21.     "Water Damage" is defined as "all insured water damage, whether driven by wind or not, other than that otherwise defined as 'Flood.'"   *See* Ex. 1, § D – Definitions, ¶ 54.

22.     The Policy has a $250,000 deductible "as respects loss or damage caused by, resulting from, contributed to or aggravated by 'Flood' . . . ."   *See* Ex. 1, § A – Declarations, ¶ 10(D).

23.     "Flood," in turn, is defined as:

A.  A general and temporary condition of partial or complete inundation of normally dry land areas, including dewatered areas from:

(1)     The rising or overflow of inland or tidal water including storm surge (all whether occurring naturally or not);

(2)     The unusual and rapid accumulation of run off of surface waters from any source;

(3)     Mudslides (i.e. mudflows), meaning a river or flow of liquid mud proximately caused by flooding as defined in A.(2) above or by the accumulation of water under the ground; or

(4)     Damage to, destruction, failure or overflowing of levees, dams, dikes, floodgates and other similar works;

B.  The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding cyclical levels which results in flooding as defined in A. above;

C.  Water that backs up a sewer or drain;

D.  Water under the ground surface pressing on, or flowing or seeping through:

(1)    Foundations, walls, floors or paved surfaces;

(2)    Basements, whether paved or not; or

(3)    Doors, windows or other openings. . . .

*See* Ex. 1, § D – Definitions, ¶ 23.

## II.    The Damage to the Temporary Causeway Constitutes Water Damage and the Water Damage Deductible Applies.

24.    To build the bridge as specified in its Contract, Wagman was required to build the Temporary Causeway in the River.  The Temporary Causeway allowed for the movement of various large cranes, drills, and excavators.  It was an artificial structure used to stage construction equipment and material.  It was not and is not "land", much less "normally dry land areas" or "dewatered areas."

25.    Wagman's cost to construct the Temporary Causeway was $1,414,667.05.

26.    Construction of the Temporary Causeway involved placing a significant quantity of materials, including stone in mesh cages and other materials, in the River to create a temporary surface.   It also involved constructing three temporary bridges consisting of rock-filled, precast concrete block abutments, steel beams and plates, concrete sills, and crane mats consisting of 12" mixed hardwood timbers.  Building the Temporary Causeway was essential to the Bridge Project.

27.    Because the Temporary Causeway was a "temporary . . . structure[] incidental to the 'Insured Project,'" the Temporary Causeway was part of the "insured property" for which the Policy provided coverage.   *See* Ex. 1, § B – Property Damage, ¶ 1(D).

28.     Wagman first discovered damage to the Temporary Causeway on Monday, January 27, 2020.

29.     The damage was caused by an unexpected increase in water flowing in the River, but not by a "Flood" as that term is defined in the policy, by any dictionary, or by the National Weather Service of the National Oceanic and Atmospheric Administration. It is both subjectively and objectively unreasonable for Starr to argue otherwise.

30.     The damage to the Temporary Causeway constitutes Water Damage under the policy because it was caused by water and does not fit the definition for "Flood" in that the Temporary Causeway is neither "normally dry land" nor land that has been "dewatered."  *See* Ex. 1, § D – Definitions, ¶¶ 23, 54.  The Temporary Causeway is a temporary structure built by Wagman as part of the construction project.

31.     On February 5, 2020, Wagman timely reported its loss to Starr via email.

32.     On February 7, 2020, Starr assigned a third-party adjustment firm, Sedgwick, to handle the loss.

33.     On February 13, 2020, Sedgwick inspected the site.  At that time, Wagman had provided Starr and Sedgwick with "before and after" photographs of the Temporary Causeway.

34.     Several months after Wagman first reported the loss to Starr and Sedgwick had inspected the damage, Starr requested a call to discuss the loss with Wagman.

35.     The call took place on April 17, 2020.  During the call, Sedgwick questioned whether the loss would be subject to the higher "Flood" deductible.  Wagman immediately explained that there was no evidence that a Flood had occurred, and that the loss was caused by Water Damage.   Furthermore, Wagman explained that the Temporary

7

Causeway was not in a "normally dry land area," which was the necessary foundation for finding that a "Flood" had occurred as per the definition in the Policy.  Instead, however, the Temporary Causeway was constructed through and in the middle of the River—a permanently wet area.  Nor was the Temporary Causeway situated in a land area that had been "dewatered," using pumping equipment or otherwise.

36.     Neither Starr nor Sedgwick issued any written opinion after the call, nor did they deny Wagman's claim, nor did they document the possibility that they would assert the "Flood" deductible, tender payment, or complete or close the claims adjustment process, which remains still open.

37.     Unfortunately, three (3) subsequent and similar insured events took place over the remainder of the year to the Temporary Causeway.   Each of those events—all of which are losses caused by Water Damage and subject to the $25,000 deductible—are described below.

38.     On the evening of October 29, 2020, the Temporary Causeway was damaged in connection with a storm named "Zeta."

39.     While repairs from the Zeta related damages were still proceeding, additional damages were sustained during the evening of November 12, 2020, during another storm named "Eta."

40.     Then, on December 25, 2020, an additional loss also took place when the Temporary Causeway was again damaged by water.

41.     Each of these three (3) subsequent incidents were reported to Starr, which has never denied coverage.   Instead, Starr now argues that all four (4) of Wagman's losses are each subject to the $250,000 Flood deductible.

8

42.     Starr's arguments that the three (3) subsequent losses are subject to the Flood deductible fail for the same reasons as for the first loss – *i.e.*, none of the four (4) losses involved a "Flood," as defined in the Policy, and therefore the "Flood" deductible is inapplicable.

43.     To date, none of Wagman's losses have been reimbursed, and the claims adjustment process remains uncompleted despite Wagman's submission of thorough and detailed proofs of loss.

44.     The total amount owed by Starr to Wagman under the Policy for the four losses totals $991,276.20, less applicable deductibles totaling $100,000, for a net amount of $891,276.20, comprised of:

   a.  $316,749.81 for the January 27, 2020 loss;

   b.  $169,354.23 for the October 29, 2020 loss;

   c.  $373,031.02 for the November 12, 2020 loss; and

   d.  $132,141.14 for the December 25, 2020 loss.

45.     Full documentation of all losses has been provided to Starr and there is no material dispute between the parties regarding the detailed quantification of these losses.

46.     Wagman understands that Starr continues to maintain the untenable position that all four (4) losses were caused by a "Flood" and that the higher Flood deductible applies to each of the losses.

47.     To date, Starr has failed to make any payments to Wagman for any of the covered losses.

## COUNT I
### (Breach of Contract)

48.     Wagman repeats and realleges the allegations of paragraphs 1 through 47 as if fully set forth herein.

49.     The Policy constitutes a binding and enforceable contract that was in full force and effect at the time of the Water Damage to the Temporary Causeway.

50.     Wagman satisfied any and all conditions to recover its claimed unpaid loss amounts under the Policy.

51.     Starr is obligated, pursuant to the terms of the Policy, to make payments to Wagman for its unpaid loss amounts.

52.     These unpaid loss amounts are covered, and yet Starr has failed or otherwise refused to make payments for the Water Damage claims.

53.     The failure to pay these amounts to Wagman constitutes a breach of Starr's contractual duties owed under the Policy.

54.     As a result of Starr's breach of its contractual duties to Wagman, Wagman has suffered damages in an amount to be proven at trial, but in an amount no less than the total value of the four claims, less applicable deductibles, and with pre-judgment and post-judgment interest to compensate Wagman for the loss of use of its funds while Starr has refused to pay.

55.     Starr has further violated its contractual duty of good faith and fair dealing by, among other things, not acting in good faith when failing to make payments owed to Wagman under the Policy, failing even to pay the undisputed amounts of the property damage loss in order to avoid payment of the total amount of the covered loss, and improperly and unreasonably classifying the losses as Flood damage when the facts

plainly reveal that no "Flood" occurred but rather that Water Damage caused the Temporary Causeway losses.  *See* Va. Code Ann. § 38.2-209 (2022); *id.* at § 38.2-510.

## COUNT II
### (Declaratory Judgment)

56.     Wagman repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57.     Starr has failed and refused to provide the full insurance coverage benefits owed to Wagman for the damage to the Temporary Causeway and insists that all losses were caused by Floods so that the higher Flood deductible would apply.

58.     By reason of the foregoing, an actual and justiciable controversy exists between Wagman and Starr regarding Starr's obligations to provide coverage for the unpaid loss amounts.

59.     As such, Wagman is entitled to a judicial declaration from this Court that: (i) Starr is obligated to perform its contractual obligations under the Policy it sold to Wagman, (ii) the four (4) Temporary Causeway losses were caused by Water Damage so that the Water Damage deductible applies to those losses, and (iii) Wagman is entitled to insurance coverage for the full amount of its losses resulting from Water Damage to the Temporary Causeway.

**WHEREFORE,** Wagman requests judgment as follows:

(a)     With respect to COUNT I: An award of money damages, pre- and post-judgment interest, and consequential damages, including attorneys' fees and costs, and accounting fees, in an amount to be determined at trial;

(b)     With respect to COUNT II: A declaration that, pursuant to the terms of the Policy, which Starr sold to Wagman, Starr is obligated to cover the losses incurred by

Wagman resulting from Water Damage to the Temporary Causeway, and awarding reasonable attorneys' fees for the prosecution of this action; and

(c)      With respect to all COUNTS: (i) pre- and post-judgment interest; (ii) costs, disbursements, and attorneys' fees; and (iii) such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby requests a trial by jury as to all Counts so triable.


Dated: January 20, 2022

By:   /s/ Vivian Katsantonis
Vivian Katsantonis (Va. Bar No. 30448)
Christopher M. Harris (Va. Bar No. 48361)
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: 703-749-1000
Fax: 703-893-8029
vkatsantonis@watttieder.com
charris@watttieder.com

*Counsel for Plaintiff, Wagman Heavy Civil, Inc.*

AND

Stephen Palley (*pro hac vice* motion to be filed)
Anderson Kill L.L.P.
1717 Pennsylvania Avenue Suite 200
Washington, DC 20006
Telephone:  202-416-6500
Facsimile: 202-416-6555
spalley@andersonkill.com

*Special Counsel for Plaintiff, Wagman Heavy Civil, Inc.*

12